**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------------
JACQUELINE FITZ                                :
                                           :
   Plaintiff,                   : Civil Action No. 05-5246 (DRD)
  v.                                 :
                                          :
                                          :
JO ANNE B. BARNHART                            :
Commissioner of Social Security                : **O P I N I O N**
                                          :
                                          :
   Defendant.                   :
---------------------------------------------------------

Abraham S. Alter, Esq.
Langton & Alter
P.O. Box 1798
2096 St. Georges Avenue
Rahway, N.J. 07065
 Attorney for Plaintiff


Christopher J. Christie
United States Attorney
By:  Vernon Norwood
 Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3902
New York, N.Y. 10278-0004
 Attorney for Defendant

**DEBEVOISE, Senior District Judge**

  The plaintiff, Jacqueline Fitz ("Fitz"), appeals from a final determination of the

Commissioner of Social Security ("Commissioner") to the extent that it denied Fitz's application for

1

Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act") for her alleged disability prior to November 2003. Fitz asserts that the Administrative Law Judge's ("ALJ") decision to deny her application for DIB was not supported by substantial evidence. On the contrary, Fitz asserts that substantial evidence in the record establishes that she was continually disabled since July 1, 2002.

## PROCEDURAL HISTORY

Fitz filed an application for DIB on June 12, 2003. (R. at 45-47). The application was denied initially and on reconsideration. (R. at 24-26). Fitz requested a hearing before an ALJ to review the application *de novo*. (R. at 39). A hearing was held on November 9, 2004 before ALJ Richard L. DeSteno. (R. at 260). Both Fitz and her brother, Phillip Fitz,("Phillip")testified at the hearing. (R. at 261-276). After the hearing, the ALJ held the record open until January 12, 2005 so that Fitz could submit additional evidence. (R. at 16). As of the writing of the ALJ's decision on February 16, 2005 no additional evidence was received. (R. at 16). Based on the evidence and testimony on the record, the ALJ issued a partially favorable decision granting DIB after November 1, 2003, but not prior thereto. (R. at 12-23). On April 22, 2005, Fitz requested that the appeals council review the ALJ's decision, (R. at 10-11), but the request was denied on September 2, 2005. (R. at 5-7). The District Court action was thereafter timely commenced.

## FACTUAL BACKGROUND

A. Fitz's Work History

At the time of the ALJ hearing Fitz was 54 years-old with a high school education. (R. at 265). Fitz previously worked as a reports clerk for AT&T, from March, 1990 until August, 2002, and as a service representative for Federal Express, from 1983 until 1990. (R. at 53). As a reports clerk,

Fitz was required to sit for six hours a day, walk for one hour a day and stand for one hour a day. (R. at 58). Fitz also reported that the heaviest object that she ever had to lift or carry at work weighed less than ten pounds. (R. at. 54). Fitz explained that her principal job responsibilities were talking to customers on the phone and typing information into the computer. (R. at 265). Fitz's job responsibilities as a service representative for Federal Express were similar to those as a reports clerk for AT&T. (R. at 265). Fitz was downsized approximately a month after her alleged July 1 stroke, (R. at 265-266), although both parties agree that Fitz has not been engaged in substantial gainful activity since July 1, 2002. (D. Br. at 13; see generally Pl. Br.).

B. Testimony

Fitz was represented by her attorney at the hearing held on November 9, 2004 before the ALJ. (R. at 262). Fitz first amended the alleged onset date of February, 27 2002 to July 1, 2002, the day Fitz alleged that she was hospitalized at Muhlenberg Regional Health Center for her first stroke. (R. at 262). Because Fitz had ordered documents from Muhlenberg Regional Health Center for her first hospitalization in July 2002, but had not received the records, the ALJ permitted the record to stay open until December 9, 2004, thirty days after the hearing. (R. at 263-64). (This date was later extended to January 12, 2005).

At the hearing, Fitz testified that on or around July 1, 2002 she suffered from a stroke, (R. at 262), and that this stroke occurred at work. (R. at 266). After the stroke she went back to work for a short period of time but she stated that she worked slowly. (R. at 266). In addition, Fitz testified that she had difficulty remembering information and had trouble communicating to customers because of her speech problems. (R. at 266-67).

Phillip, also testified at the hearing. (R. at 268). He stated that he remembered visiting Fitz

in the hospital sometime in July 2002, shortly after her stroke. (R. at 269-72). He testified that he observed at that time that she was dragging her leg but could not remember which leg she dragged. (R. at 269). He also testified that her speech was a little slurred, and he would have to ask her to repeat herself when talking to her in person and on the phone. (R. at 269-70). He further stated that Fitz's daily way of life changed from that day on. (R. at 270). More specifically, he testified that Fitz went about her tasks a lot more slowly and had difficulty using her arms. (R. at 273). He also stated that Fitz moved in with her mother after the stroke and since that time has not driven. (R. at 270-73).

C. Fitz's Medical History

Fitz has suffered from high blood pressure since 1999. (R. at 81). She also has suffered from hypertension since about 2000. (R. at 83). She stated that she has smoked approximately one pack of cigarettes a day since 1968. (R. at 83). Fitz alleged that she might have had a stroke around 2000. (R. at 83).

On March 21, 2002, Fitz went to see Dr. M.A. Sarraf for a pain in her hand and follow up on her hypertension. (R. at 101). Upon examination the doctor wrote that she had a deep voice and noted edema and tenderness in her fourth left finger. (R. at 101). The doctor diagnosed her with hypertension, stage II, uncontrolled. (R. at 101). He ruled out a fracture on her finger and hypothyroidism and found nothing else wrong on the examinations of her other systems. (R. at 101). He also counseled Fitz to stop smoking and to limit her salt intake. (R. at 101).

After the alleged onset date of her stroke on July 1, 2002, Fitz met with Dr. Sarraf on July 9, 2002 complaining of slurred speech and fatigue. (R. at 100). In his medical report, Dr. Sarraf again noted that Fitz had a deep voice and thick speech. (R. at 100). The doctor again diagnosed her with hypertension, stage II, uncontrolled. (R. at 100). Although the doctor recommended that Fitz get an

MRI, blood-work test, and a carotid ultrasound, Fitz did not get any of the tests recommended and never returned to Dr. Sarraf for a followup. (R. at 98-99).

Fitz submitted an August 6, 2003 report by Dr. Sreedevi Menon regarding the results of his examination of Fitz made at the request of Disability Determination Services. (R. at 83). At the examination, Fitz reported to Dr. Menon that her daily activities consisted of cooking, cleaning, and doing laundry three times a week. (R. at 83). She also reported that she showered, dressed and bathed herself daily. (R. at 83). Dr. Menon noted that she used no assistive device, she did not need help changing for the examination or getting on and off the examination table, and she was able to rise from her chair without difficulty. (R. at 84).

As to mental status screening, Dr. Menon reported that Fitz was dressed appropriately; maintained good eye contact; appeared oriented in all spheres; showed no evidence of hallucinations, delusions, impaired judgment, or significant memory impairment; her affect was normal, and she denied suicidal ideation. (R. at 84).

Dr. Menon found that, although, Fitz's muscle strength in her upper and lower extremities was nearly full at 4/5, her hand and finger dexterity were intact with a grip strength 5/5 bilaterally. (R. at 85). More specifically, Fitz's gait and stance were normal, she had full range of motion of her shoulders, elbows, forearms, wrist, hips, knees, and ankles bilaterally, and Fitz was able to walk on her heels and toes without difficulty. (R. at 85). Dr. Menon ultimately concluded that Fitz was only "moderately restricted in walking, lifting, carrying and handling objects." (R. at 86). Dr. Menon, also concluded that Fitz did not have any active lung disease but she did have a borderline obstruction and her chest x-rays revealed an increased cardiac diameter. (R. at 85).

Since November 1, 2003, the approximate date of Fitz's most recent stroke, she has required

5

assisted living facilities and visiting nurse services. (R. at 105-259). Because the record is substantial regarding Fitz's disabilities after November 1, 2003, the Commissioner is not contesting the award of benefits after this date. (Df. Br. at 7 n.5).

**DISCUSSION**

A. Determination of Disability and Burdens of Proof

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful" employment. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has promulgated a five-step sequential evaluation to be used to determine whether a claimant is disabled and entitled to DIB. 20 C.F.R. § 404.1520. The ALJ must first consider whether the claimant is currently engaging in substantial gainful activity ("SGA"). § 404.1520(a)(4)(I). If the claimant is working, and the work involves SGA, her application for disability benefits is automatically denied. § 404.1520(b). If the claimant is not engaging in SGA, the ALJ must then consider whether the claimant suffers a severe impairment. § 404.1520(a)(4)(ii). At this step the impairment must also meet the duration requirement of 20 C.F.R. § 404.1509, which requires the impairment to last, or be expected to last, for a continuous period of at least twelve months. Id.

If the claimant meets step two, the analysis continues to step three, where the ALJ must determine whether the medical evidence of the individual's impairment, or combination of impairments, is equivalent to one or more of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 ("Appendix"). § 404.1520(a)(4)(iii). If the impairment is listed then the claimant is determined to be disabled. Id. If the claimant's impairment or its equivalent is not listed, the ALJ moves on to step four. See id. At step four, "[t]he claimant bears the initial burden of establishing that he is incapable of performing his past relevant work due to a medically determinable physical or mental impairment." Brewster v. Heckler, 786 F. 2d 581, 584 (3d Cir. 1986). "[C]laimant satisfies her initial burden of showing that she is unable to return to her previous employment when her doctor substantiates her subjective claims." Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).

At this step, the ALJ determines whether the claimant has the necessary "residual functional capacity" ("RFC") to return to her former line of work. § 404.1520(a)(4)(iv). RFC is defined as "the most you can still do[,in a work setting,] despite your limitations," which arise out of a claimant's impairments, such as pain. § 404.1545. Step four "involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the claimant's [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform" that work. Burnett v. Comm'r of Soc.Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000). If the ALJ concludes that the claimant lacks the RFC to return to her former work, the evaluation moves to its final step and "the burden of proof shifts to the Secretary to show that the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy." Rossi, 602 F.2d at 57.

At step five the ALJ must show that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); See also 20 C.F.R. § 404.1523.

B. The ALJ's Findings

The ALJ determined that the "claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits as of the established onset date" of November 1, 2003, but not prior to this date. (R. at 22). Under the first of the five steps the ALJ determined that "the claimant has not engaged in substantial gainful activity since July 1, 2002." (R. at 22). Prior to Novemeber 1, 2003, the ALJ found that Fitz "had 'severe' impairments involving some left-sided hemiparesis, hypertension and chronic obstructive pulmonary disease, which did not meet or equal in severity the criteria of any impairment listed in Appendix 1." (R. at 22). After November 1, 2003, the ALJ held that Fitz "has suffered from the effects of a cerebral vascular accident that have met the criteria of medical listing 11.04A." (R. at 22). Furthermore, the ALJ determined that prior to November 1, 2003, Fitz retained the RFC to perform her past relevant work as a reports clerk for AT&T and as a service representative for Federal Express. (R. at 22). Ultimately the ALJ concluded that Fitz "has been under a disability, as defined in the Social Security Act, since November 1, 2003, but not prior thereto." (R. at 22).

C. Standard of Review

In reviewing the ALJ's decision, the duty of the District Court is not to review the case *de novo*, but instead to discern whether the record contains substantial evidence to support the findings of the ALJ. See, e.g., Bradley v. Bowen, 667 F. Supp. 161, 163 (D.N.J. 1987). If the ALJ's findings are based on substantial evidence then the court must give deference to these findings even if the evidence could support more than one reasonable interpretation. See Haseler v. Acting Comm'r of Soc. Sec., 33 Fed. Appx. 631, 633 (3d Cir. 2002). Substantial evidence requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). However, if the ALJ's decision is not supported by substantial evidence, the District Court has the power to modify or reverse it. 42 U.S.C. § 405(g).

In assessing whether the ALJ's decision is based on substantial evidence, the Court of Appeals for the Third Circuit has required that the ALJ consider all probative evidence, and, if the ALJ ignores or fails to resolve a conflict created by countervailing evidence, then the ALJ has failed to meet his burden. See Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

D. Evaluation of the ALJ's Findings

Fitz asserts that the decision of the ALJ is unsupported by substantial evidence in the record. (Pl. Br. at 4). Fitz also contends that substantial evidence exists in the record to support a finding of disability prior to November 1, 2003. (Pl. Br. at 4). More specifically, Fitz asserts that the ALJ erred by finding that Fitz's impairments did not meet the severity standard under step two of the sequential evaluation. (Pl. Br. at 9). Contrary to Fitz's contention, the ALJ held that Fitz's impairment's were

severe. (R. at 22). [1]

The Court holds that the ALJ's findings are supported by substantial evidence in the record. The medical and testimonial evidence in the record does not establish that Fitz's impairments met the listing criteria in Appendix 1, and Fitz does not challenge the ALJ's findings in this regard. Furthermore, substantial evidence in the record supports the ALJ's finding that prior to November 1, 2003, Fitz retained the RFC to perform her past relevant work, which was at a sedentary level. Fitz failed to meet her burden of proof to establish that she did not retain the RFC to perform her past relevant work prior to November 1, 2003.

The ALJ analyzed Fitz's impairments under step four of the sequential evaluation where he held that Fitz maintained the RFC to return to her past relevant work as a reports clerk and as a service representative. Here the ALJ defined Fitz's RFC as an ability to perform sedentary work. In making this determination, the ALJ first analyzed Dr. Menon's findings and found it highly relevant that Fitz maintained almost full movement in her body and was able to walk on her toes. The ALJ also observed that, although Dr. Menon noted that Fitz had mild left-side hemiparesis, she did not appear to be in any acute distress. Also highly relevant to the ALJ's analysis was Dr. Menon's report that Fitz did not need any help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. The ALJ also analyzed Dr. Menon's findings that Fitz did not suffer any significant neurological deficits, communicated effectively, maintained good eye-contact, and was well coordinated. Based on these findings, the ALJ concluded

---

[1] A major portion of Fitz's brief is devoted to the argument that the ALJ's finding, that Fitz's impairments were not severe, is not supported by substantial evidence. The ALJ in fact found that Fitz's pre-November 1, 2003 impairments were severe. Consequently much of Fitz's argument is simply pointless.

that Fitz maintained the RFC to engage in her previous work, which was described by Fitz as only requiring six hours of sitting, one hour of standing, one hour of walking and at the most requiring her to lift up to ten pounds.

Fitz contests this holding only at two instances in her brief. First, Fitz argues that the ALJ's conclusion that "[t]he idea of left sided hemiparesis would not impose work related restrictions is, in a word, ridiculous." (Pl. Br. at 11). Similarly, Fitz argues that "[t]he idea that such non-controllable high blood pressure would not impose any work related restrictions is likewise argued to be goal-directed and intentionally ignorant." (Pl. Br. at 16). Fitz, however, does not present any evidence to support her argument, other than her bald assertions. (See Pl. Br. 11, 16). Furthermore, at the trial, although Fitz claimed that there was additional evidence to support her allegations, no additional evidence had been proffered to supplement the record, despite the ALJ holding the record open for an additional sixty days.

Further, Fitz argues that even if the record is insufficient a medical expert should have been required to approximate an onset date. (Pl. Br. at 19). Under Social Security Regulation 83-20, an onset date of disability may be earlier than when the individual filed for benefits, and the ALJ must make this determination based on the evidence in the record. S.S.R. 83-20. However, in some cases involving "slowly progressive impairments" it might not be possible for the ALJ to determine the onset date based on the medical evidence, and, in these cases, an expert's advice should be sought to establish the onset date. Id. Fitz contends that she "undoubtedly suffers from such a 'slowly progressing disease,'" and, therefore, the ALJ erred by not requiring a medical expert to establish an onset date. (Pl. Br. at 19). However, Fitz presents no evidence to support her contention. (Pl. Br. at 19). Even assuming, arguendo, that Fitz had a "slowly progressing disease" prior to July 1, 2002,

11

she continuously worked until July 1, 2002, and she even worked after that date until she was let go. She, therefore, would not have been disabled at that time.

Fitz has failed to meet her burden in establishing a disability prior to November 1, 2003, because, despite having additional time to do so, she failed to augment the record. The ALJ reviewed and analyzed the evidence (and lack of evidence). It is sufficient to support his conclusion that Fitz was not disabled prior to November 1, 2003.

## CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence. Thus, for the reasons stated above, the Commissioner's final determination is affirmed. An appropriate order will be entered.

                                                                                   **/s/ Dickinson R. Debevoise**
                                                                     DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:        March 7, 2007